IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT GAY,

                        Plaintiff,                  Case No. 3:06 CV 7104

   -vs-

                                                    MEMORANDUM OPINION

TELEFLEX AUTOMOTIVE,

                        Defendant.

KATZ, J.

     This case involves Plaintiff Robert Gay's race discrimination claims filed against Teleflex Automotive Group, Inc. Presently, the matter is before the Court pursuant to Magistrate Judge Vernelis K. Armstrong's Report and Recommendation ("R & R"), Doc. 43, regarding Defendant's motion for summary judgment. Doc. 31. The R & R recommends that this Court grant Defendant's motion. This Court has made a *de novo* determination of the Magistrate Judge's findings to which Plaintiff objects.

**I. Background**

     The Court hereby adopts the Magistrate Judge's statement of the facts as provided in the R & R, and as follows:

> Defendant, a subsidiary of Teleflex ® Incorporated, is a designer, manufacturer and distributor of specialty engineered products. http://www.teleflex.com/. Based in Philadelphia, it has a manufacturing facility in Van Wert, Ohio (Docket No. 40, p. 9).
>
> Plaintiff, an African American, is a resident of Van Wert, Van Wert County, Ohio (Docket No. 1; Docket No. 40, pp. 7, 51, 70). He was employed by Defendant at the Van Wert, Ohio plant for more than twenty years (Docket No. 40, p. 9). In February 2007, Plaintiff's job position was described as general operator (Docket

No. 40, p. 10). He was also a party to the collective bargaining agreement (Docket No. 40, 14).

Plaintiff contends that he has been subjected to discriminatory conduct which began in 1987, and he presents the following supporting allegations. In 1984, Plaintiff submitted his application to the Defendant, checked on the application daily and acknowledged every Wednesday that he was available for employment (Docket No. 40, 69). An African American from Detroit was hired after Defendant advised Plaintiff that they were not hiring (Docket No. 40, p. 69). Plaintiff filed a charge with the Ohio Civil Rights Commission (OCRC) and [] was hired six months later (Docket No. 40, p. 73).

Approximately ten years later, Plaintiff was fired for participating in a drug transaction. He filed a grievance, was reinstated after a year's absence and awarded back pay (Docket No. 40, pp. 21, 22, 24, 26). Plaintiff was suspended once for half of an evening and again for three days after he argued with a foreman about a job assignment (Docket No. 40, pp. 26, 27, 28, 74). He was allowed to go home for an evening after getting into an argument with a co-worker (Docket No. 40, p. 33, 34). Plaintiff was threatened with reassignment for failure to improve performance (Docket No. 40, p. 39).

Plaintiff was injured while working in 1994 (Docket No. 40, p. 318). Plaintiff injured his elbow on or about July 4, 2003. He was forced to return to work two days after the injury (Docket No. 40, pp. 321, 322). Dr. Jocelyn M. Wray ordered that Plaintiff restrict the use of his right arm from July 21, 2003 through January 19, 2004 (Docket No. 40, Exhibits 03 A-P). Plaintiff opined that the episodes of continuing discrimination began when he was ordered to return to work (Docket No. 40, p. 371).

Ultimately, Plaintiff was diagnosed with tennis elbow (Docket No. 40, p. 120, 121). On February 1, 2005, Plaintiff underwent surgical excision and removal of foreign material from his elbow (Docket No. 40, pp. 281, 282, Gay Dep. Ex04-A). He was excused or assigned to restricted duty on the following dates: February 1 to April 2005; May 26 to June 7, 2005, June 7 to June 21, 2005, June 21 to July 17, 2005, July 19 to August 9, 2005 (Docket No. 40, pp. 226, 284, 285, 286, Exhibits 03-Q, 03-T, 03-U, 03- W, 03-Y). Plaintiff was released to work on June 10, 2005 (Docket No. 40, Gay Dep. Ex11). Defendant was unable to accommodate Plaintiff's restrictions for light duty so he was assigned work through the modified off-duty site program [(MDOS Program)] at the Van Wert County Young Men's Christian Association (YMCA) (Docket No. 40, Gay Dep. Ex12, Gay Dep. Ex03-AA-FF). This restriction was lifted on August 8, 2005 (Docket No. 40, p. 296).

Plaintiff claims that he was admonished for failure to accept a job assignment because it required the use of two hands. He was also advised that failure to take the job assigned would result in lost worker's compensation benefits (Docket No. 40, pp. 45, 162). However, Theresa Atkins, a Caucasian co-worker, was accommodated for more than three years so that she could recover appropriately (Docket No. 40, pp. 136, 168, 380, 381). Plaintiff was dissuaded from filing a grievance addressing the disparity of assignments (Docket No. 40, p. 46).

Plaintiff was "pulled off" worker's compensation status and assigned a "two-hand" job. He complained and was transferred to third shift (Docket No. 40, pp. 55, 137, 138, 188, 189). Theresa Stout, an employee at OCRC, advised Plaintiff that his claim for discrimination based on shift change lacked merit (Docket No. 40, p. 56). Plaintiff did, however, submit to mediation and ultimately obtained a right to sue letter from OCRC. He did not file suit (Docket No. 40, pp. 58, 60).

Racial epithets were written on the bathroom walls which included Plaintiff's name but omitted the names of two other African Americans at the work site (Docket No. 40, pp. 60-67). Plaintiff identified the worker whom he believed responsible and complained to the human resources director who found the event humorous (Docket No. 40, p. 60-64). Plaintiff complained that Jeremy Buechner, a foreperson, abused his authority and used racism to discriminate against him (Docket No. 40, p. 87, 88). Jeremy Buechner was responsible for assigning him a two-hand job and failing to accommodate his restrictions to one-hand work (Docket No. 40, p. 93). Plaintiff was given six demerit points for failing to submit his physician's authorization for medical leave in a timely manner (Docket No. 40, p. 217). About six months to a year later, the points were removed (Docket No. 40, p. 218-219).

## PROCEDURAL BACKGROUND

Plaintiff filed a charge of racial discrimination with OCRC and the Equal Employment Opportunity Commission on October 1, 2003 (Docket No. 40, Gay Dep Ex20, Teleflex 00314). OCRC denied Plaintiff's request for reconsideration on June 3, 2004 (Docket No. 40, Gay Dep Ex22, Teleflex 00193). He filed an internal grievance on June 24, 2005 alleging a violation of the collective bargaining agreement (Docket No. 40, Gay Dep Ex14). The grievance was denied (Docket No. 40, Gay Dep Ex 14, Teleflex 00170). Plaintiff filed another charge of racial discrimination on September 24, 2005 (Docket No. 40, Gay Dep Ex23, Gay00034). The parties submitted their dispute to mediation (Docket No. 40, Gay Dep Ex24, Gay 00030). Plaintiff withdrew his charge (Docket No. 40, Gay Dep Ex 25, Teleflex 00014 and 00016). The EEOC issued the right to sue letter on December 27, 2005 (Docket No. 40, Gay Dep Ex26, Teleflex 00007). Plaintiff filed a

> Complaint seeking judicial review on March 24, 2006 (Docket No. 1). Defendant seeks an order of judgment as a matter of law.

Doc. 43 at 1-4.

On February 4, 2008, the Magistrate Judge recommended that this Court grant Defendant's motion for summary judgment. Doc. 43. On February 5, 2008, Plaintiff filed his objections to the R & R, Doc. 44, and Defendant filed a memorandum in opposition to Plaintiff's objections on February 21, 2008, Doc. 45. For the reasons stated herein, this Court adopts the Magistrate Judge's R & R, and Defendant's motion for summary judgment is hereby granted.

## II.  Summary Judgment

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; see also *Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; see also *Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III.   Discussion**

As explained by the Magistrate Judge, Plaintiff has brought causes of action under (1) 42 U.S.C. § 1983; and (2) Title VII. Doc. 43 at 5. Plaintiff's claims stem from two separate allegations of race discrimination. *Id*.

> The October, 2003 charge states that Caucasian co-workers were not required to return to work when their physicians restricted employment duties, and Plaintiff was the first employee to be assigned to the community nonprofit agency despite the limitations of his employment functions. In the September 24, 2005 charge, for which a Notice of Right to Sue was issued, Plaintiff alleged that (1) he was subjected to adverse employment action and (2) his white counterpart, Teresa Adkins, was not forced to perform light duty despite her impairments. In summary, Plaintiff contends that these facts support his contention that he can make a prima facie case for discrimination based on race.

*Id*.

### A. Plaintiff's Reference to an OCRC Employee's Comments

At the outset, this Court notes that Plaintiff objects to the R & R for "considering statements of opinion from OCRC workers as to the merit of the case." Doc. 44 at 1 (citing Doc. 43 at 3). Plaintiff argues that "[s]uch statements are inadmissible hearsay and should not be considered in the court's decision," or even referenced except to indicate their exclusion from consideration. *Id*. As properly pointed out by Defendant, neither the Magistrate Judge nor this Court relies on the statement at issue in determining this case. Doc. 45 at 12-13. Therefore, Plaintiff's objection to the Magistrate Judge's reference of this statement is immaterial for purposes of the disposition of this matter.

### B. Plaintiff's Section 1983 Claims

Plaintiff seeks relief under 42 U.S.C. § 1983. However, "[t]o sustain a § 1983 claim, [a] plaintiff must establish that it was deprived of a right secured by the Constitution or laws of the United States, and that this deprivation was caused by a person acting under the color of state

law." *Memphis, Tenn. Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)).

"Private persons may be held liable under § 1983 if they willfully participate in joint action with state agents." *Id.* (citing *Dennis v. Sparks,* 449 U.S. 24, 27-28 (1980); *United States v. Price*, 383 U.S. 787 (1966) (stating that to act under color of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.); *Hooks v. Hooks,* 771 F.2d 935, 943 (6th Cir. 1985) ("Private persons jointly engaged with state officials in a deprivation of civil rights are acting under color of law for purposes of § 1983.")). Additionally, "[w]hen a defendant is a private entity, [the Sixth Circuit] recognizes three tests for determining whether its conduct is fairly attributable to the state: the public function test, the state compulsion test, and the nexus test." *Id.* (citing *Wolotsky v. Huhn,* 960 F.2d 1331 (6th Cir. 1992)).

> The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992). The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take a particular action so that the choice is really that of the state. *Id.* Finally, the nexus test requires a sufficiently close relationship between the state and the private actor so that the action taken may be attributed to the state.

*Am. Postal Workers Union*, 361 F.3d at 905.

As properly noted by the Magistrate Judge, Plaintiff is unable to sustain a section 1983 action. Doc. 43 at 7. Plaintiff has not presented any evidence that Defendant is a state actor, nor has Plaintiff presented any evidence that Defendant satisfies the public function, state compulsion, or nexus tests. Moreover, Plaintiff's objections to the Magistrate Judge's R & R do not offer any

arguments to rebut the conclusion that the section 1983 claims should be dismissed for failure to show that Defendant acted under color of state law. *See* Doc. 44. Therefore, Defendant's motion for summary judgment is granted with regard to Plaintiff's section 1983 claims.

**C.      Title VII Claims for the 2003 Charge of Discrimination**

"In the October 2003 charge, Plaintiff alleged that (1) he was deprived of worker's compensation leave and forced to work, (2) Caucasian employees are not subjected to similar treatment and (3) the decision to assign him to the third shift for one week was predicated on race." Doc. 43 at 7. Conversely, Defendant argues that Plaintiff's 2003 charge of discrimination is time barred. Doc. 31 at 14.

The relevant procedure for bringing Title VII claims has been explained by the Sixth Circuit in *EEOC v. Frank's Nursery Crafts, Inc.*, 177 F.3d 448 (6th Cir. 1999):

> Under Title VII, once an individual files a charge alleging unlawful employment practices, the EEOC must investigate the charge and determine whether there is "reasonable cause" to believe that it is true. *See* 42 U.S.C. § 2000e-5(b) (1998). By filing a charge, an individual does not file a complaint seeking relief, but merely informs the EEOC of possible discrimination. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 68, 80 L. Ed. 2d 41, 104 S. Ct. 1621 (1984). If the EEOC finds reasonable cause to believe discrimination occurred, it must "endeavor to eliminate any such alleged unlawful employment practice by informal methods of conference, conciliation, and persuasion." *Id.* If the EEOC cannot secure an acceptable conciliation agreement from the employer, it "may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge." 42 U.S.C. § 2000e-5(f) (1998). . . .
>
> While allowing the EEOC to bring suit against employers in federal court, Title VII retains a private cause of action--apart from any action the statute entitles the EEOC to bring--for the individual victim of employment discrimination. Where the EEOC investigates a charge and, after 180 days, either concludes that there is no "reasonable cause" to believe it is true or fails to make a finding of "reasonable cause," the EEOC must notify the aggrieved individual. *See* 42 U.S.C. § 2000e-5(f)(1) (1998). If the EEOC finds "reasonable cause" to believe an employer has violated Title VII but chooses not to bring suit on behalf of the

8

> federal government, the EEOC will issue a "notice of right to sue" on the charge to the aggrieved party. *See* 29 C.F.R. § 1601.28(b) (1998). Or, if after 180 days the EEOC fails to make a "reasonable cause" finding, the aggrieved individual may request a "right to sue" letter from the EEOC. *See id.* An individual may not file suit under Title VII if she does not possess a "right to sue" letter from the EEOC. *See Rivers v. Barberton Bd. of Educ.*, 143 F.3d 1029, 1032 (6th Cir. 1998).

*Id*. at 455-56.

Once a Plaintiff receives EEOC notification of the right to sue, he must file suit within ninety days. *See* 42 U.S.C. § 2000e-5(f)(1); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 460 (6th Cir. 2001). In the case at bar, the record indicates that Plaintiff received a right to sue letter for his 2003 charge of discrimination sometime prior to June 3, 2004. Doc. 31 at 15. Therefore, because Plaintiff did not file this within the ninety day period, Plaintiff's 2003 charge is time barred.

Plaintiff has attempted to resurrect his 2003 charge by claiming that it was part of a continuing violation. Doc. 35 at 12. The "continuing violation doctrine may serve to toll the statutory period within which to file a complaint with the EEOC." *Wade*, 259 F.3d at 460-61 (citing *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977); *Dixon v. Anderson*, 928 F.2d 212, 216-17 (6th Cir. 1991)). However, the continuing violation doctrine "does not relieve a plaintiff of the need to file an action within 90 days of receiving the right-to-sue letter. *Id*. (citing *Clark v. Nissan Motor Mfg. Corp. U.S.A.*, 1998 U.S. App. LEXIS 27743, at *18 (6th Cir. 1998)). Therefore, Plaintiff's 2003 charge of discrimination is time barred.

**D.     Title VII Claims for the 2005 Charge of Discrimination**

Plaintiff's 2005 charge of race discrimination is based on Plaintiff's assignment to, and work assignments at, the off-sight MDOS program. Doc. 35 at 7.

9

"When, as is the case here, a plaintiff presents only indirect evidence of disparate treatment based on race, [a district court must] analyze the claim under the *McDonnell Douglas* burden-shifting approach." *Clay v. United Parcel Service, Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (citing *Johnson v. Kroger Co.*, 319 F.3d 858, 865-66 (6th Cir. 2003)). Under *McDonnell Douglas,* a plaintiff must first allege facts to establish a prima facie case of race discrimination. *Bradshaw v. Goodyear Tire and Rubber Co.,* 485 F. Supp. 2d 821, 826-27 (N.D. Ohio 2007) (citing *McDonnell Douglas* 411 U.S. 792, 802, (1973)). Once a plaintiff has made such a showing, "the burden shifts to the [defendant] to articulate a legitimate, non-discriminatory reason for its decision." *Id.* Finally, if a defendant meets its burden, "the burden shifts back to the plaintiff to prove that the legitimate reasons . . . were not its true reasons, but were a pretext for discrimination." *Bradshaw,* 485 F. Supp. 2d 821, 827 (citing *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253 (1981); *Betkerur v. Aultman Hosp. Ass'n,* 78 F.3d 1079, 1095 (6th Cir. 1996); *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1160 (6th Cir. 1990)). On a motion for summary judgment, a district court considers whether there is sufficient evidence to create a genuine dispute at each stage of the *McDonnell Douglas* inquiry. *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th cir. 1999).

Plaintiff carries the initial burden to present a prima facie case of race discrimination. To make a prima facie case, Plaintiff must show "that (1) he was a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a person outside the protected class was treated more favorably than him." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994)).

10

In the case at bar, the Magistrate Judge found, without objection by Defendant, that Plaintiff is a member of a protected class and is qualified for the position. Doc. 43 at 11. However, the Magistrate Judge determined that Plaintiff failed to satisfy the second and fourth prongs of the prima facie case for race discrimination, and therefore failed to meet his initial burden under *McDonnell Douglas*. *Id*. This Court agrees.

A plaintiff satisfies the second prong of the prima facie case by showing "a materially adverse change in the terms and conditions of his employment . . . ." *Hollins v. Atalntic Co.*, 188 F.3d 652, 662 (6th Cir. 2002).

As noted by the Magistrate Judge, "[w]hen Defendant did not have work available that could accommodate Plaintiff's medical restrictions, he was assigned, pursuant to the transitional work program to work at the [MDOS] site, the YMCA. Doc. 43 at 11. Moreover,

> [t]he work program was authorized by company policy. Plaintiff maintained his employment status with Defendant and he was covered under the company's labor agreement. The YMCA accommodated his physical restrictions. Plaintiff was paid at the same rate that he would earn if he had been working at the plant. He was not demoted and he did not lose material benefits or standing as a result of the assignment.

*Id*. Thus, "[Plaintiff's] assignment changed the address of [his] work station; it did not modify the terms or conditions of his employment." *Id*. Plaintiff's objection to the Magistrate Judge's R & R does not dispute any of the above. *See* Doc. 44. Plaintiff simply states in passing, while arguing the *fourth* prong of the prima facie case, that "Gay received disparate treatment." *Id* . at 1. Such an argument is insufficient to support an allegation of an adverse employment action.

The Magistrate Judge also found that Plaintiff failed to show he suffered an adverse employment action with his argument that he was forced to work while on worker's

11

compensation. Doc. 43 at 11. Specifically, the Magistrate Judge explained that because Plaintiff was released by his doctors to go back to work, Plaintiff's return to work could not have constituted an adverse employment action. *Id*. at 11-12. Plaintiff objected to the Magistrate Judge's finding by claiming that "[t]he [R & R] errs in finding that [Plaintiff] has not created an issue of material fact as to whether he was forced to work while on workers' compensation. From the [R & R] itself it is clear that he was forced to work, and further that he had to avail himself of the grievance process to have his job assignment changed to one within his physical restrictions." Plaintiff offers no evidentiary support for his objection. Plaintiff's argument that he suffered an adverse employment action is insufficient, and Plaintiff fails to satisfy the second prong of the prima facie case for race discrimination.

Plaintiff also fails to satisfy the fourth prong of the prima facie case. "[A] plaintiff may satisfy the fourth element by showing *either* that the plaintiff was replaced by a person outside of the protected class *or* that similarly situated non-protected employees were treated more favorably than the plaintiff." *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1247 (6th Cir. 1995) (emphasis in original). The Magistrate Judge stated that "[t]he only relative comparator is Teresa Adkins," but that "there is a lack of evidence that Plaintiff and Teresa Adkins are similarly situated in all relevant respects." Doc. 43 at 12; *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 1999) (requiring that to be "similarly situated," employees must be similarly situated "in all relevant respects"). Moreover, the Magistrate Judge explained that Plaintiff failed "to demonstrate that Teresa Adkins is outside the protected class or that she was relieved of her worker's compensation status despite comparable medical conditions." *Id*.

12

The only objection Plaintiff offers to support the fourth prong of the prima facie case is that "[t]he [R & R] fails to recognize that as the only person reassigned to work outside the facility, every person who was not, including those identified in the briefs was comparable, and Gay received disparate treatment." Doc. 44 at 1. Plaintiff's arguments and objections are insufficient to show that a person outside of the protected class was treated more favorably than he. Plaintiff has not satisfied the fourth prong of a prima facie race discrimination case, and Plaintiff fails to meet his burden under *McDonnell Douglas*.

**V.     Conclusion**

For the reasons stated herein, The Magistrate Judge's Report and Recommendation is hereby adopted. (Doc. 43.) Defendant's motion for summary judgment is hereby granted. (Doc. 31.)

IT IS SO ORDERED.

      s/ *David A. Katz*
      DAVID A. KATZ
      U. S. DISTRICT JUDGE